```
          IN THE UNITED STATES DISTRICT COURT FOR THE
                  EASTERN DISTRICT OF OKLAHOMA
```

HAROLD E. ROBERTS,            )
                              )
            Plaintiff,        )
                              )
v.                            )   Case No. CIV-07-007-KEW
                              )
MICHAEL J. ASTRUE,            )
Commissioner of Social        )
Security Administration,      )
                              )
            Defendant.        )

## OPINION AND ORDER

Plaintiff Harold E. Roberts (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and REMANDED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

(10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on June 4, 1954 and was 51 years old at the time of the ALJ's decision. He completed his high school education and an associates degree. Claimant previously worked as an insurance sales representative and a sales representative for a lawn care center. Claimant alleges an inability to work beginning April 26, 2002 due to back pain, carpal tunnel syndrome in both wrists, arthritis in his back and hands, chronic fatigue due to hepatitis, diabetes, and depression. Claimant's insured status

expired on March 31, 2006.

**Procedural History**

On December 13, 2002, Claimant protectively filed for disability benefits under Title II of the Social Security Act (42 U.S.C. § 401, *et seq.*) and for supplemental security income under Title XVI (42 U.S.C. § 1381, *et seq.*). Claimant's application for benefits was denied initially and upon reconsideration. On March 14, 2005, Claimant appeared at a hearing before ALJ Jodi Levine in Ardmore, Oklahoma. By decision dated May 22, 2006, the ALJ found Claimant was not disabled at any time through the date of the decision. On November 6, 2006, the Appeals Council denied Claimant's request for review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found Claimant retained the residual functional capacity ("RFC") to perform a wide range of light and sedentary work and could perform his past relevant work as a sales agent.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error requiring reversal in (1) failing to give the opinions of Claimant's treating physician controlling weight over the opinion of a non-examining medical

expert; and (2) engaging in a credibility analysis of Claimant's testimony which is not supported by substantial evidence.

**Evaluation of Treating Physician Opinions**

Claimant contends the ALJ failed to afford the opinions of Claimant's treating physician the controlling weight that they are due. Claimant alleges he suffered from carpal tunnel syndrome, back problems and chronic hepatitis C prior to the onset date, causing him to leave one place of employment with a tire manufacturer to become an insurance sales representative. (Tr. 75-77, 180-181, 188-189, 193). Because of these conditions, Claimant lost weight and became nauseated and fatigued due to the medication necessary for treatment. (Tr. 187-188).

On March 8, 2002, Claimant sought treatment from D. Harvey C. Jenkins. Dr. Jenkins found Claimant in "moderate distress secondary to pain." (Tr. 216). He diagnosed Claimant with "[l]umbar degenerative disc disease/lumbar disc herniation vs. lumbar stenosis 'foraminal.'" Id. In testing, straight leg raising was positive and reflexes were reduced. Sensation was mildly decreased in L4 to S1 distribution. Claimant's shoulders showed tenderness over the subacromial bursa region and a positive impingement sign with weakness in shoulder abduction. Id.

An MRI conducted on March 18, 2002 revealed posterior disc bulges at L2-3, L3-4, L4-5, and L5-S1. No significant central

5

canal narrowing was noted. Mild to moderate left neuroforaminal narrowing was seen at L4-5. (Tr. 228-229). On April 19, 2002, Claimant again saw Dr. Jenkins. He referred Claimant for epidural steroid injections and prescribed Lortab. (Tr. 217).

On February 4, 2003, Claimant presented for care due to neck stiffness, shoulder to fingers aches and tingling and low back and left leg tingling. (Tr. 236). Claimant underwent an MRI of the cervical spine on February 19, 2003. The test revealed a mild disc protrusion at C5-C6 which diminished the spinal canal by 10-15% and caused bilateral neuroforaminal narrowing. Claimant was diagnosed with prominent degenerative disc disease and disc space narrowing at C5-C6. (Tr. 224-225).

On April 11, 2003, Claimant was referred to Dr. Scott A. Mitchell for steroid injections. Upon review of the records and the MRI, Dr. Mitchell diagnosed Claimant with cervical disc disease. (Tr. 246). In April and May of 2003, Claimant underwent physical therapy which improved his condition overall. However, he stopped therapy due to financial restrictions. Claimant did complain of lower back pain more than neck pain when contacted by the therapist after he did not attend therapy sessions. (Tr. 271).

On May 15, 2003, Claimant saw his neurologist, Dr. Eric S. Friedman. He ordered a new MRI "to better define his pathology." (Tr. 273). On May 20, 2003, Claimant underwent an additional MRI.

The examiner found no evidence of any significant disc abnormality with minimal facet degeneration at the lower lumbar levels. He also found no significant interval change since the prior MRI on March 18, 2002. (Tr. 218).

On July 10, 2003, Claimant was again seen by Dr. Friedman. He could offer nothing from a surgical standpoint for Claimant's lumbar spine. (Tr. 272).

On October 27, 2003, Claimant saw Dr. David Mantsch, a pain specialist. Dr. Mantsch found Claimant had weakness of the left arm and leg, muscle spasms, increased urination, muscle tension, muscle aches, nausea, fatigue, and weight gain. Claimant estimated his average daily pain level at a 9 out of 10, with his lowest level being 5 out of 10. (Tr. 302). Dr. Mantsch diagnosed Claimant with lumbar disc displacement with radiculitis, cervical disc displacement with radiculitis, spondylosis cervical and lumbar spine, moderate left cervicothoracic paravertebral muscle spasm, cervical and lumbar spine sprain/strain, and somatic dysfunction cervical and lumbar spine. (Tr. 298). Dr. Mantsch prescribed Oxycodone, Neurontin, and Soma and administered facet joint injections at C-5, C-6, and C-7. Id.

On November 5, 2003, Claimant received a cervical paravertebral joint nerve blockade and diagnostic imaging from Dr. Mantsch. (Tr. 295). Claimant's cervical spine showed most

7

significant disc space narrowing at C5-C6 with very mild osteophyte formation. No evidence of acute vertebral body height reduction or spondylolisthesis was noted. (Tr. 296).

On December 10, 2003, Claimant returned to Dr. Mantsch for a left lumbar facet joint block and diagnostic testing. (Tr. 289). After the procedure was performed, Claimant's pain levels and range of motion improved. (Tr. 291).

On January 21, 2004, Dr. Mantsch noted that Claimant's pain had dramatically improved with the facet joint/facet nerve local anesthetic block both to the left cervical and left lumbar regions. Claimant reported improved pain tolerance with medication without significant side effects and complained of no new signs, symptoms, or weakness. (Tr. 323). Claimant's current pain level was estimated at a 5 out of 10 with moderate significant spasms or increased muscle tone resulting in pain. Dr. Mantsch found Claimant in moderate acute distress due to pain and was ambulating with a moderate antalgic gait. Id. Dr. Mantsch stated Claimant understands the degenerative conditions, including his diabetes, that are contributing to his spine and extremity pain, numbness, tingling and weakness. He was scheduled to have phenol injections in his left lower back. (Tr. 324).

On March 11, 2004, Claimant was attended by Dr. Mantsch once again, relating that his pain has remained improved with facet

joint/facet nerve phenol blocks to the left lumbar spine. He also reported improved pain tolerance with medications. Dr. Mantsch found Claimant to have moderate significant spasm or increased muscle tone resulting in pain. Claimant rated her current pain at a 7 out of 10. (Tr. 321).

On May 6, 2004, Claimant reported a pain level of 5 out of 10 to Dr. Mantsch. Dr. Mantsch noted mild significant spasm or increased muscle tone resulting in pain. Claimant continued on his medications with trigger point injections to be scheduled. (Tr. 319-320).

On July 6, 2004, Claimant visited Dr. Mantsch. Claimant's pain level was rated at a 4 out of 10. His spasms remained mild. (Tr. 317-318).

On September 10, 2004, Claimant next saw Dr. Mantsch. His pain was rated at a level 5 out of 10. Claimant was to schedule trigger point injections and be evaluated for a TENS unit. (Tr. 315-316).

On October 22, 2004, Dr. Mantsch noted Claimant's pain had improved to a 3 out of 10. The TENS unit was noted as "quite beneficial overall, improving his function levels and pain levels." (Tr. 313-314).

On December 29, 2004, Dr. Mantsch found Claimant's pain level had increased because Claimant had not taken his medicine due to a

9

dental procedure.  Overall, Dr. Mantsch's assessment remained the same.  (Tr. 311-312).

On March 1, 2005, Dr. Mantsch completed a Medical Assessment of Ability to Do Work Related Activities (Physical) form with regard to Claimant's functioning.  He found Claimant could sit up to 2 hours per 8 hour day and stand and walk less than 1 hour in an 8 hour day.  He stated Claimant could not work an 8 hour day at any level, even if permitted to sit or stand alternatively with usual breaks.  Dr. Mantsch found Claimant could not lift but could handle objects with his hands.  He determined Claimant could not use his feet for pushing.  His conclusion states "[w]ould agree that patient is severely limited [secondary to] spine disease."  (Tr. 326).

In his decision, the ALJ limits his discussion of Dr. Mantsch's opinions to those set forth on the Medical Assessment form. (Tr. 21).  The ALJ recognizes Dr. Mantsch as "the claimant's pain management physician," and, therefore, acknowledges his treating physician status.  Id.  The ALJ then rejects Dr. Mantsch's assessment in stating, "[t]he physical residual functional capacity assessment outlined by Dr. Mantsch, is not well supported by other objective medical findings."  (Tr. 23).

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is

entitled to "controlling weight."  Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003).  An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record."  Id. (quotation omitted).  "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight."  Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527."  Id. (quotation omitted).  The factors reference in that section are:  (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  Id. at 1300-01 (quotation omitted).  After considering these factors, the ALJ must "give good reasons"

for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

The ALJ apparently afforded Dr. Mantsch's opinions no weight. In doing so, the ALJ failed to make the necessary factual findings related to the Watkins' factors to justify this reduction in weight, instead choosing to adopt the findings of a non-treating physician. On remand, the ALJ shall engage in the detailed analysis required by the prevailing case authority.

**The ALJ's Credibility Determination**

Claimant also contends the ALJ engaged in a flawed credibility evaluation. Specifically, Claimant alleges the ALJ improperly discounted Claimant's testimony, utilizing boilerplate language without taking into consideration the mandated factors. It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d

12

387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

The ALJ simply fails to provide any basis for the rejection of Claimant's subjective complaints of pain. He simply provides (with underline for apparent emphasis) the language of rejection routinely adopted by ALJs who provide no explanation for their findings on credibility. Namely, "<u>the undersigned finds that the claimant's medically determinable impairments could reasonably be</u>

13

<u>expected to produce the alleged symptoms</u>, but that the <u>claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible</u>." (Tr. 23)(emphasis in original). This statements lacks the required tie-in to the medical evidence in order to justify the rejection of Claimant's testimony. On remand, the ALJ shall analyze Claimant's statements in light of the factors required by the case authority and set forth that analysis in sufficiently clear terms that it may be evaluated on appeal.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Order.

DATED this 26th day of March, 2008.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE